UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE MCCOLLUM, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TGI FRIDAY'S, INC.; and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: SACV 22-00392-FWS-JDE<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND ACTION TO STATE COURT [15]** |

Before the court is Plaintiff Michelle McCollum's ("Plaintiff") Motion to Remand this action to Superior Court. (Dkt. 15 ("Motion" or "Mot.").) Defendant TGI Friday's, Inc. ("Defendant") opposes the Motion. (Dkt. 16 ("Opposition" or "Opp.").)

The court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is

required by statute"). Based on the state of the record, as applied to the applicable law, the court **DENIES** the Motion.

I.   Background

   A.   Summary of Allegations

On February 4, 2022, Plaintiff filed a class action Complaint in California Superior Court, County of Orange, alleging violations of California's wage and hour laws based on Defendant's "systematic pattern of wage and hour violations." (*See* Dkt. 1-3, Exh. A ¶ 3 ("Complaint" or "Compl.").) Specifically, Plaintiff alleges Defendant (1) failed to provide first and/or second meal periods in violation of Cal. Labor Code §§ 226.7 and 512, and Industrial Welfare Commission ("IWC") Wage Order § 11, (*id.* ¶¶ 37-45); (2) failed to permit rest breaks in violation of Cal. Labor Code § 226.7 and IWC Wage Order § 12, (*id.* ¶¶ 46-52); (3) failed to provide accurate itemized wage statements in violation of Cal. Labor Code § 226, (*id.* ¶¶ 53-59); (4) failed to pay all wages due on separation of employment in violation of Cal. Labor Code §§ 201, 202, and 203, (*id.* ¶¶ 60-65); (5) failed to timely pay all wages due upon during employment in violation of Cal. Labor Code §§ 204 and 210, (*id.* ¶¶ 66-70); (6) failed to reimburse necessary business expenses in violation of Cal. Labor Code §§ 2800 and 2802, (*id.* ¶¶ 71-77); and (7) violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, (*id.* ¶¶ 78-90).

Plaintiff brings her first, second, third, fifth, sixth, and seventh claims on behalf of the class identified in the Complaint as "[a]ll California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between August 10, 2017 and the date of class certification." (*Id.* ¶ 20; *see generally id* ¶¶ 37-90.) Plaintiff brings her fourth claim, failure to pay all wages due on separation of employment, on behalf of the "Waiting Time Subclass," which assertedly consists of "[a]ll Class Members who separated their employment with Defendants at any time between August 10, 2018 and the date of class certification." (*Id.* ¶ 20; *see generally id.* ¶¶ 60-65.)

**B.     Procedural Background**

Defendant filed a Notice of Removal ("NOR") alleging federal jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"), on March 14, 2022. (Dkt. 1.) Plaintiff filed the Motion shortly thereafter on March 22, 2022, (Dkt. 15), and briefing concluded on April 15, 2022, (see Dkts. 16-18). While the Motion was pending, the parties submitted Supplemental Briefing on the import of the California Supreme Court's recent decision in *Naranjo v. Spectrum Sec. Servs., Inc.*, 509 P.3d 956 (2022), in response to the court's order on Defendant's related *ex parte* Application. (Dkts. 26-27, 32-33.) Defendant's motion to consolidate this action with *Gragnano v. TGI Fridays Inc.*, 8:22-cv-00392-FWS-JDE, is currently pending before the court. (Dkts. 28-30, 33, 35.)

## II.     Legal Standards

**A.     Class Action Fairness Act ("CAFA") Diversity Jurisdiction**

"To remove a case from a state court to a federal court, a defendant must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)). CAFA generally permits a federal district court to exercise subject matter jurisdiction over a putative class action in which: (1) the amount in controversy exceeds $5,000,000; (2) the number of members of all purported classes of plaintiffs totals 100 or more persons; and (3) any member of a proposed class of plaintiffs differs in citizenship from any defendant. 28 U.S.C. § 1332(d); *Dart Cherokee*, 574 U.S. at 84-85. Congress intended courts to read CAFA's provisions broadly; accordingly, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89.

### 1.     Amount in Controversy

To determine the amount in controversy, "courts first look to the complaint" and generally find the "sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir.

2015) (citation and internal quotation marks omitted).  In the absence of an amount in controversy alleged in a complaint, "a defendant's amount in controversy allegation is normally accepted when invoking CAFA jurisdiction, unless it is 'contested by the plaintiff or questioned by the court.'"  *See Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989, 992 (9th Cir. 2022) (quoting *Dart Cherokee*, 574 U.S. at 87).  "When a plaintiff contests the amount in controversy allegation, 'both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied.'" *Jauregui*, 28 F.4th at 992 (quoting *Dart Cherokee*, 574 U.S. at 88).  "[T]he removing party must be able to rely 'on a chain of reasoning that includes assumptions to satisfy its burden to prove by a preponderance of the evidence that the amount in controversy exceeds $5 million,' as long as the reasoning and underlying assumptions are reasonable." *Jauregui*, 28 F.4th at 993 (quoting *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015)).  Assumptions must have "some reasonable ground underlying them," and "may be reasonable if [they are] founded on the allegations of the complaint. *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) (citations and internal quotation marks omitted).

In summary, the Ninth Circuit has set forth "three principles that apply in CAFA removal cases." *Id.* at 922.  "First, a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Id.* (quoting *Ibarra*, 775 F.3d at 1197).  "Second, when a defendant's allegations of removal jurisdiction are challenged, the defendant's showing on the amount in controversy may rely on reasonable assumptions." *Id.* (citing *Ibarra*, 775 F.3d at 1197-99).  "Third, when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Id.* (citing *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018).

        2.      <u>"Facial" and "Factual" Challenges to the Amount in Controversy</u>

After a removing defendant alleges the amount in controversy requirement is met, "the plaintiff can contest the amount in controversy by making either a 'facial' or a 'factual' attack on the defendant's jurisdictional allegations." *Harris v. KM Indus., Inc.*, 980 F.3d 694, 699 (9th Cir. 2020) (citing *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020)). "A 'facial' attack accepts the truth of the [defendant's] allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Salter*, 974 F.3d at 964 (9th Cir. 2020) (quoting *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014)). In evaluating a facial attack, "the court, accepting the allegations as true and drawing all reasonable inferences in the defendant's favor, 'determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.'" *Salter*, 974 F.3d at 964 (quoting *Leite*, 749 F.3d at 1121).

In contrast, "[a] factual attack 'contests the truth of the … allegations' themselves. *Harris*, 980 F.3d at 699 (alteration in original). Here, "the burden is on the defendant to show, by a preponderance of the evidence, that the amount in controversy exceeds the $5 million jurisdictional threshold." *Id.* (citing *Ibarra*, 775 F.3d at 1197). "Both parties may submit evidence supporting the amount in controversy before the district court rules." *Harris*, 980 F.3d at 699 (citations omitted).

**III.    DISCUSSION**

   **A.    Requests for Judicial Notice**

The court may take judicial notice of facts that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). It cannot take judicial notice of facts that are subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cty. Of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). For example, "courts routinely take judicial notice of letters published by the

government . . . as well as records and reports of administrative bodies." *Smith* v. *Los Angeles Unified Sch. Dist.*, 830 F.3d 843, 851 n.10 (9th Cir. 2016) (internal citations and quotation marks omitted).

Attached to Plaintiff's Reply is a request for the court to take judicial notice of the "Declaration of Camisha Washington in Support of Defendant Roadrunner Transportation Services, Inc.'s Opposition to Plaintiff's Notice of Motion and Motion to Remand Pursuant to 28 U.S.C. § 1447, filed in *Jauregui v. Roadrunner Transportation Services, Inc.*, Case No. 2:21-cv-04657-RGK-PD, on July 19, 2021." (Dkt. 17-1 ¶ 1.) Preliminarily, Plaintiff's "request for the [c]ourt to take judicial notice of the [Declaration], presented for the first time in its reply brief, is inappropriate." *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1284 (C.D. Cal. 2016). Additionally, as a declaration submitted in an unrelated action, "the [Washington] [D]eclaration is a court filing and a matter of public record, [but] its contents are not beyond reasonable dispute," and thus the court "cannot properly notice its contents." *Urrutia v. Chipotle Mexican Grill, Inc.*, 2017 WL 2901717, at *3 (C.D. Cal. June 16, 2017); *see also id.* at *3 n.1 (collecting cases ruling similarly). Accordingly, the court **DENIES** Plaintiff's request for judicial notice.

B.     **CAFA Jurisdiction**

    1. <u>Whether Plaintiff's Challenges to Defendant's Asserted Amount in Controversy are "Facial" or "Factual"</u>

Plaintiff argues that (1) Defendant improperly assumes the violation rates used to calculate the amount in controversy for each of Plaintiff's claims; (2) Defendant improperly bases the amount in controversy calculations on "derivative" penalties for waiting time and wage statements; (3) Defendant's calculations for wage statement and waiting time penalties do not take into account the one-year statute of limitations applicable to statutory penalties under Cal. Labor Code §§ 204, 226; and

1  (4) Defendant's assumption of a 25% "benchmark rate" for attorneys' fees is not supported by law.[1]

Although a plaintiff may rely on evidence to mount a factual attack, "[a] factual attack . . . need only challenge the truth of the defendant's jurisdictional allegations by making a reasoned argument as to why any assumptions on which they are based are not supported by evidence." *Harris*, 980 F.3d at 700. Conversely, where a plaintiff "d[oes] not challenge the rationality, or the factual basis, of [a defendant's] assertions" and "argue[s] only that [defendant] 'must support its assertion with competent proof,'" that challenge is a "facial attack, rather than a factual attack." *See Salter*, 974 F.3d at 964.

Here, Plaintiff argues that Defendant's assumptions are unsupported by evidence or the Complaint's allegations, but does not offer alternative assumptions or calculations. (*See* Mot. at 4-6; Reply at 2-6.) However, Plaintiff does raise arguments that certain of Defendant's assumptions improperly assume that "every single class member experienced a meal period and [] rest period violations every pay period." (*See* Mot. at 5 (emphasis removed)). Plaintiff also argues that Defendant's calculations, which take into account "derivative claims" and a "25% benchmark rate" for attorneys' fees, are not supported by law, and that Defendant's calculations regarding statutory penalties include violations occurring outside the applicable statute of limitations. (*See* Reply at 3-6.) Accordingly, the court finds Plaintiff brings a "factual attack" and, as such, "the burden of demonstrating the reasonableness of the assumptions on which the calculation of the amount in controversy was based remain[s]" with Defendant. *See Harris*, 980 F.3d at 701.

---

[1] The court observes that Plaintiff's second, third, and fourth arguments were first raised in her Reply to the Opposition despite Plaintiff having access the bases of Defendant's calculations in the Notice of Removal.

Still, the court notes the Ninth Circuit in *Harris* cautioned that "the preponderance standard does not require a district court to perform a detailed mathematical calculation of the amount in controversy before determining whether the defendant has satisfied its burden" and the court "should weigh the reasonableness of the removing party's assumptions, not supply further assumptions of its own." *Id.* at 701. To that end, the court will "consider[] any evidence put forth by the parties, and assess[] the reasonableness of the defendant's assumptions . . . , 'then decide[] where the preponderance lies.'" *Id.* at 701 (quoting *Ibarra*, 775 F.3d at 1198); *but see Jauregui*, 28 F.4th 989, 994 (9th Cir. 2022) (holding court erred by "assigning $0 to five out of seven of [p]laintiff's claims" where defendant "offered substantial evidence and identified assumptions to support its valuation of each of the various claims" but "the court disagreed with some of [defendant's] assumptions"). Considering the parties' submissions, Plaintiff's challenge to Defendant's calculations concerns Defendant's assumptions rather than a demonstration by affirmative evidence. (*See* Reply at 2.)

                2. <u>Reasonableness of Defendant's Calculations</u>

                      *i.*    *Defendant's Asserted Violation Rate*

In its calculations, Defendant assumes one violation occurred per pay period with respect to Plaintiff's first, second, third, and fifth claims. (*See* Opp. at 11-15, 18-19; NOR at 15-17, 19-20.) Based on the record before the court, the court finds (1) Plaintiff alleges Defendant engaged in a "systematic pattern of wage and hour violations," (Compl. ¶ 3); (2) contrary to Plaintiff's assertions, Defendant's assumption of one violation per pay period is not a "100% violation rate," e.g., one that assumes a violation occurred on every applicable shift with respect to every class member; (3) Plaintiff's allegations do not allege a more precise frequency of violations; and (4) Plaintiff has declined to offer any other evidence demonstrating the frequency with which the alleged violations occurred. Accordingly, the court finds Defendant's assumptions of one violation per claim per pay period reasonable. *See*

*Hamilton v. Wal-Mart Stores, Inc.*, 2017 WL 4355903, at *3 (C.D. Cal. Sept. 29, 2017) (finding assumption of "a weekly violation rate to be reasonable" under the same four considerations).

      Plaintiff cites two pre-*Dart Cherokee* cases to argue that Defendant's assumptions are unreasonable. However, both cases applied "the strong presumption against removal jurisdiction" that the Supreme Court later held does not apply in CAFA cases. *Compare Martinez v. Morgan Stanley & Co. Inc.*, 2010 WL 3123175, at *1 (S.D. Cal. Aug. 9, 2010) (applying "[t]he strong presumption against removal jurisdiction") (citations and internal quotation marks omitted) *and Roth v. Comerica Bank*, 799 F. Supp. 2d 1107, 1129 (C.D. Cal. 2010) (same), *with Dart Cherokee*, 574 U.S. at 89 ("[T]here is "no antiremoval presumption attends cases invoking CAFA."). Even if these cases are applicable, Defendants' assumptions here are distinguishable from those in *Martinez* and *Roth*. In *Martinez*, the court found defendants' assumptions were not supported where plaintiffs alleged "that [p]laintiff worked four hours of unpaid overtime per workday for the entire class period"; "every assistant who worked for them during the class period worked overtime"; and "assistants were not provided three rest or meal breaks per week," during an average 20 pay periods over the course of a year. 2010 WL 3123175, at *5-6. Similarly, in *Roth*, the court found defendants' assumptions of "one to three" rest period violations per week and "3 to 5 hours of overtime each week" were not supported based on plaintiff's allegations of "'regularly and/or consistently' work[ing] overtime, [and] 'often' miss[ing] meal or rest periods" during the 26 pay periods over the course of one year. 799 F. Supp. 2d at 1120 1121, 1224-25. Here, Plaintiff alleges violations occurred pursuant to Defendant's "systematic pattern of wage and hour violations," allegations of greater breadth than those in *Roth*. Defendant also assumes violation rates of once per pay period, less than in *Martinez* and the upper bound in *Roth*.

> ii. *Plaintiff's Other General Challenges to Defendant's Calculations*

As noted above, Plaintiff also advances three general challenges to Defendant's asserted amount in controversy: (1) Defendant improperly bases the amount in controversy calculations on Plaintiff's "derivative" penalties for waiting time and wage statements; and (2) Defendant's calculations for wage statement and waiting time penalties do not take into account the one-year statute of limitations applicable to statutory penalties under Cal. Labor Code §§ 204, 226.

While this Motion was pending, the court ordered the parties to submit Supplemental Briefing on *Naranjo v. Spectrum Sec. Servs., Inc.*, 509 P.3d 956 (2022). (Dkt. 27; *see also* Dkts. 31, 32.) In *Naranjo*, the California Supreme Court held that "missed-break premium pay constitutes wages for purposes of Cal. Labor Code section 203, and so waiting time penalties are available under that statue if the premium pay is not timely paid," and "disapprove[d]" of Court of Appeal precedent on which Plaintiff relies in arguing to the contrary. *See id.* at 966, 969. (*See also* Reply at 3-4.) Similarly, the Supreme Court held that, "provided the conditions specified in the statute are otherwise met, failure to report premium pay for missed breaks can support monetary liability under [Cal. Labor Code] section 226 for failure to supply an accurate itemized statement reflecting an employee's gross wages earned, net wages earned, and credited hours worked." *Naranjo*, 509 P.3d at 972. In light of *Naranjo*, Plaintiff's argument that Defendant improperly takes into account "derivative" penalties for waiting time and wage statements no longer legally viable.

As to Plaintiff's argument that Defendant fails to take into account the applicable statute of limitations, the Ninth Circuit recently noted that its definition of the 'amount in controversy' in an action "undermine[d]" a plaintiff's "reliance on various statutes of limitation to challenge" a defendant's calculations because the "'strength of any defenses indicates the *likelihood* of the plaintiff prevailing; it is irrelevant to determining the amount that is at stake in the litigation.'" *Jauregui*, 28

F.4th at 994 n.6 (quoting *Arias*, 936 F.3d at 928). Rather, "the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover." *Arias*, 936 F.3d at 927. "Where a removing defendant has shown potential recovery *could* exceed $5 million" and the plaintiff "has neither acknowledged nor sought to establish that the class recovery is potentially any less, the defendant has borne its burden to show the amount in controversy exceeds $5 million." *Id.* (citation and internal quotation marks omitted). With this understanding in mind, the court turns to Defendant's calculations of the amount in controversy as to Plaintiff's individual claims.

### iii. Meal Period Premiums

Defendant contends that the amount placed in controversy for Plaintiff's claim for failure to provide meal periods under Cal. Labor Code §§ 226.7 and 512, and IWC Wage Order § 11, is $901,309.50. (Opp. at 11; NOR at 15.) Defendant's calculations are based on figures provided in the Declaration of Jennifer Rote, Defendant's "Senior Vice President, General Counsel" attached to Defendant's Notice of Removal.[2] (Dkt. No. 1-4 ("Rote Declaration" or "Rote Decl.") ¶ 2.) These calculations are based on Defendant's "approximately 2,325 non-exempt, hourly paid workers [employed] at Defendant's restaurant locations in the State of California" from January 7, 2020, to March 9, 2022. (*Id.* ¶ 10 & n.1.) Defendant then multiplied this number of potential class members by an assumed single violation per each of the average 26 pay periods worked by Defendant's non-exempt, hourly paid workers in California from January 7, 2020, to March 9, 2022, and one hour's pay at the average hourly rate of $14.91 per hour. (*Id.* ¶¶ 11, 14; Opp. at 11; NOR at 15.)

---

[2] The Rote Declaration submits that Ms. Rote has reviewed "information and data related to Defendant's business and personnel operations" including "payroll records of current and former employees of Defendant in the State of California"; "employment and compensation information" for Plaintiff and "other current and former employees." (Rote Decl. ¶¶ 3-4.)

The court finds Defendant has sufficiently placed $901,309.50 in controversy for this claim. Plaintiff alleges, as part of the "systematic pattern" of violations by Defendant, (Compl. ¶ 3), that "[a]t all relevant times, Defendant failed to pay Plaintiff and Class Members meal period premiums for missed, late, and/or short meal periods," (Compl. ¶ 44), and "Plaintiff and Class Members did not receive compliant meal periods for working more than five (5) and/or ten (10) hours per day because their meal periods were missed, late, short, and/or they were not permitted to take meal periods," (Compl. ¶ 42). Based on these allegations, the court concludes Defendant's assumption of a violation rate of once per pay period is reasonable. *See Hamilton*, 2017 WL 4355903, at *4 ("[B]ecause Plaintiff claims that the violations occurred regularly, as a pattern and practice, the Court finds Defendant's estimation of one violation per work week reasonable and conservative.") (citations omitted); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010), *aff'd sub nom. Coleman v. Estes Exp. Lines, Inc.*, 631 F.3d 1010 (9th Cir. 2011) (noting "courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation").

### iv. Rest Break Violations

Defendant contends that the amount placed in controversy for Plaintiff's claim for failure to permit rest breaks under Cal. Labor Code § 226.7 and IWC Wage Order § 12 is $901,309.50. (Opp. at 13; NOR at 16.) Using the same figures as detailed above, Defendant multiplied the number of Defendant's non-exempt, hourly paid workers in California (2,325) by an assumed single violation pay per each of the average 26 pay periods and one hour's pay at the average hourly rate of $14.91 per hour. (Rote Decl. ¶¶ 11, 14; Opp. at 13; NOR at 16.)

The court finds Defendant has placed $901,309.50 in controversy for this claim. The court's analysis, and the parties' arguments, are materially similar to that discussed above in relation to Plaintiff's claim for failure to provide meal periods. As noted above, Plaintiff alleges, as part of the "systematic pattern" of violations by

Defendant, (Compl. ¶ 3), that "[d]uring the relevant time period, Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked because they were required to work through their daily rest periods and/or were not authorized to take their rest periods," (Compl. ¶ 49), and "[a]t all relevant times, Defendants failed to pay Plaintiff and Class Members rest period premiums for missed, late, and/or interrupted rest periods," (Compl. ¶ 51). Accordingly, the court finds it is reasonable for Defendant to assume a violation rate of once per pay period. *See Hamilton*, 2017 WL 4355903, at *4; *Coleman* 730 F. Supp. 2d at 1149.

v. *Wage Statement Penalties*

Defendant contends that the amount placed in controversy for Plaintiff's claim for failure to provide accurate itemized wage statements under Cal. Labor Code § 226 is $5,928,750. (Opp. at 13-15; NOR at 17.) To calculate this number, Defendant assumed each of the 26 pay periods in which one rest break and one meal period violation occurred resulted in each of Defendant's 2,325 non-exempt, hourly paid workers in California who suffered a violation receiving an inaccurate wage statement. (Opp. at 14-15; NOR at 17.) Starting with Cal. Labor Code § 226(e)'s initial payment of $50 and $100 for each subsequent violation, Defendant estimated that the total payments would amount to $2,550, short of the $4,000 statutory maximum. (Opp. at 14-15; NOR at 17.) Multiplying the number of Defendant's non-exempt, hourly paid workers in California (2,325) by the penalty per worker ($2,550), Defendant arrived at the estimated amount of $5,928,750. (Opp. at 14-15; NOR at 17.)

The court finds Defendant's calculations sufficiently reasonable to place $5,928,750 in controversy for this claim. Plaintiff's allegations with respect to this claim include, as part of the "systematic pattern" of violations by Defendant, (Compl. ¶ 3), that "[t]he deficiencies [in wage statements] include, among other things, the failure to correctly state the gross and net wages earned, total hours worked, all

applicable hourly rates in effect, and the numbers worked at each hourly rate by the Class Members," (Compl. ¶ 55). The court finds it reasonable for Defendant to assume, in light of (1) these allegations suggesting widespread "facial violations"; (2) the court's findings above; and (3) the absence of evidence to the contrary; that the 26 pay periods in which a rest or meal break violation occurred resulted in the inaccurate recording of an itemized wage statement to that effect. *See Ramirez v. Carefusion Res., LLC*, 2019 WL 2897902, at *4 (S.D. Cal. July 5, 2019) (finding reasonable assumption that "every wage statement" violated § 226(e) where "Plaintiff provide[d] no evidence supporting her contention that there were ever any wage statements that included the requisite 'accurate itemization' of overtime, missed meal breaks, and rest breaks" and alleged "defendant failed to list 'all the requirements under Cal. Labor Code § 226' on its wage statements"); *Vikram v. First Student Mgmt., LLC*, 2017 WL 4457575, at *4 (N.D. Cal. October 6, 2017) (finding reasonable assumption that "every wage statement would be in violation" where Plaintiff "d[id] not assert that the wage statements ever included" alleged "off the clock work" and did not provide "any evidence that Defendant issued any accurate wage statements") (alteration in original).

### vi. Waiting Time Penalties

Defendant contends that the amount placed in controversy for Plaintiff's claim for failure to pay all wages due on separation of employment under Cal. Labor Code §§ 201, 202, and 203 is $5,453,059.65. (Opp. at 19; NOR at 17-19.) In the Rote Declaration, Defendant estimates that "during the time-period of January 7, 2020 through [March 9, 2022], Defendant has separated from 1,522 non-exempt, hourly paid workers at Defendant's restaurant locations in the State of California." (Rote Decl. ¶ 12.) Defendant notes Cal. Labor Code § 203(a)[3] entitles a discharged

---

[3] Cal. Labor Code § 203(a) provides, in pertinent part: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or

1  employee up to 30 days' pay at the employee's regular pay rate for each day
2  separation payment is delayed.  (Opp. at 15; NOR at 18.)  Here, Defendant assumed
3  each of the 1,522 non-exempt, hourly employees that separated from Defendant
4  during the asserted class period waited at least 30 days to receive their wages owed
5  after termination.  (Opp. at 15-17; NOR at 18-19.)  *See also* Cal. Labor Code § 203(a).
6  Multiplying the number of separated employees (1,522) by the average hourly rate of
7  those employees ($15.41), the average number of hours these employees worked per
8  week (7.75 hours), and the 30-day delay, Defendant arrived at the estimated amount of
9  $5,453,059.65.  (Rote Decl. ¶ 13; Opp. at 17; NOR at 19.)

The court finds Defendant's assumptions are reasonable, and, as such, Defendant has placed $5,453,059.65 in controversy for this claim.  Defendant's calculations are based on the Waiting Time Subclass, which Plaintiff alleges are "[a]ll Class Members who separated their employment with Defendants at any time between August 10, 2018 and the date of class certification."  Again, Plaintiff's allegations under this claim are based on the "systematic pattern" of violations by Defendant, (Compl. ¶ 3), and concern Defendant's "fail[ure] to pay the Waiting Time Subclass all their earned wages upon termination, including, but not limited to, meal period premiums, and rest period premiums." (Compl. ¶ 62).

Under analogous circumstances, the Ninth Circuit has noted it would not be unreasonable for a defendant to assume that a class of terminated plaintiffs would be entitled to the maximum 30-day penalty.  *See Jauregui*, 28 F.4th at 994 (holding "it was not unreasonable for [defendant] to assume that the vast majority (if not all) of the alleged violations over the *four years* at issue in this case would have happened more than 30 days before the suit was filed, which would entitle the employees to the 30-

---

who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."

day penalty" where "a very small percentage of employees might possibly [have] not be[en] entitled to the maximum penalty").

### vii. Failure to Pay Wages During Employment

Defendant contends that the amount placed in controversy for Plaintiff's claim for failure to timely pay all wages due upon during employment under Cal. Labor Code §§ 204 and 210 is $11,857,500. (Opp. at 18-19; NOR at 19-20.) Defendant's calculations take into account the statutory penalties of $100 for an initial violation and $200 for each subsequent violation, but omit the "25% of the amount unlawfully withheld" sought by Plaintiff. (*See* Opp. at 18; NOR at 20; Compl. ¶ 70 (citing Cal. Labor Code § 210).) Accordingly, Defendant assumed each of the 26 pay periods in which one rest break and one meal period violation occurred resulted in each of Defendant's 2,325 non-exempt, hourly paid workers in California not receiving all wages due for that period. (Opp. at 15-17; NOR at 19-20.) For the first pay period, Defendant multiplied its non-exempt, hourly paid workers in California (2,325) by the initial violation amount ($100). (Opp. at 19; NOR at 20.) Defendant then added that amount to the multiplicative sum of the same number of workers (2,325), remaining average pay periods (25), and the amount of each subsequent violation ($200), to arrive at the estimated amount of $11,857,500. (Opp. at 19; NOR at 20.)

The court finds Defendant's calculations adequately reasonable to place $11,857,500 in controversy for this claim. Again, as part of Defendant's "systematic pattern" of violations, (Compl. ¶ 3), Plaintiff alleges that "Defendants willfully failed to pay wages to Plaintiff and Class Members within the required time periods," (Compl. ¶ 68). In light of these allegations the court's findings above that Defendant has reasonably assumed one meal and rest break violation per pay periods, and the lack of evidence to the contrary, the court finds it reasonable for Defendant to assume that the 26 pay periods in which a rest or meal break violation occurred resulted in the failure to pay wages owed on account of those alleged violations. *See Lopez v. Bio-Reference Lab'ys, Inc.*, 2022 WL 1744993, at *4 (E.D. Cal. May 31, 2022) ("The

assumed frequency with which class members did unpaid work and were denied breaks therefore logically supports defendants' assumptions here."); *cf. id.* (adopting defendants' "reasonable" assumptions where "plaintiff offer[ed] no alternatives for comparison").

> viii. Attorneys' Fees

Prior to adding in attorneys' fees, the aggregate of Defendant's asserted amount in controversy is $25,041,928.65. (NOR at 20.) From this, Defendant argues that 25% of this number—e.g., the amount in controversy with respect to Plaintiff's claims—yields an amount in controversy for attorneys' fees of $4,446,562.49. (NOR at 22-25; Opp. at 19-21.)

The court concludes Defendant has properly included attorneys' fees in their calculations. *See Arias*, 936 F.3d at 928 (district court erred in excluding prospective attorneys' fees from the amount in controversy where plaintiff sought attorneys' fees and "there w[as] no dispute that at least some of the California wage and hour laws that form the basis of the complaint entitle[d] a prevailing plaintiff to an award of attorneys' fees"). However, as Plaintiff notes, the Ninth Circuit declined to adopt a "per se" rule that "the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery." *Fritsch*, 899 F.3d at 796. Still, the Ninth Circuit in *Fritsch* did "not hold that a percentage-based method is never relevant when estimating the amount of attorneys' fees included in the amount in controversy, only that a per se rule is inappropriate." *Id.* n.6.

Here, apart from Defendant's asserted 25% benchmark rate for attorneys' fees, neither Plaintiff nor Defendant offers an alternative calculation for the court to consider. Though Defendant cites some district court cases decided after *Fritsch* holding 25% is a reasonable rate to use in similar class actions, (see NOR at 22 (citing, e.g., *Wheatley v. MasterBrand Cabinets, LLC*, 2019 WL 688209, at *7 n.15 (C.D. Cal. Feb. 19, 2019); *Ramos v. Schenker, Inc.*, 2018 WL 5779978, at *3 (C.D. Cal. Nov. 1, 2018)), the Ninth Circuit reaffirmed in *Arias* that "[a]lthough such an

estimate might be reasonable, we have declined to adopt a per se rule that 'the amount of attorneys' fees in controversy in class actions is 25 percent of all other alleged recovery.'" *Arias*, 936 F.3d at 928 (quoting *Frisch*, 899 F.3d at 796); *cf. id.* ("As we did in *Frisch*, we leave the calculation of the amount of the attorneys' fees at stake to the district court on remand.") (citation omitted). Regardless, because the court has found the amount in controversy to this point exceeds the jurisdictional threshold of $5,000,000, it need not consider potential attorneys' fees at this stage. *See Arias*, 936 F.3d at 928 n.5 (noting on remand "there would be no need to calculate attorneys' fees [if] the damages in controversy would exceed the jurisdictional threshold").

      ix. *Aggregate Amount in Controversy*

Adding the amounts above, Defendant has demonstrated, by a preponderance of the evidence, an amount of controversy in this action of $25,041,928.65.[4]

**IV. DISPOSITION**

For the foregoing reasons, the court **DENIES** the Motion.

**IT IS SO ORDERED.**

DATED: July 11, 2022

                Hon. Fred W. Slaughter
                UNITED STATES DISTRICT JUDGE

---

[4] Defendant does not include in its calculations of the amount in controversy any estimates of monetary relief based on Plaintiff's claims for (1) failure to reimburse necessary business expenses under Cal. Labor Code §§ 2800, 2802; and (2) violations of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et. seq.*