**MATERN LAW GROUP, PC**
MATTHEW J. MATERN (SBN 159798)
mmatern@maternlawgroup.com
MIKAEL H. STAHLE (SBN 182599)
mstahle@maternlawgroup.com
KAYVON SABOURIAN (SBN 310863)
ksabourian@maternlawgroup.com
1230 Rosecrans Avenue, Suite 200
Manhattan Beach, CA 90266
Tel: (310) 531-1900
Facsimile: (310) 531-1901

Attorneys for Plaintiff HAYDEN
GRAGNANO, individually and on
behalf of all others similarly situated

**AEGIS LAW FIRM, PC**
KASHIF HAQUE (SBN 218672)
khaque@aegislawfirm.com
FAWN F. BEKAM (SBN 307312)
fbekam@aegislawfirm.com
9811 Irvine Center Drive, Suite 100
Irvine, California 92618
Telephone: (949) 379-6250
Facsimile:  (949) 379-6251

Attorneys for Plaintiff MICHELLE
MCCOLLUM, individually and on
behalf of all others similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

| | |
|---|---|
| HAYDEN GRAGNANO, MICHELLE MCCOLLUM, individually and on behalf of all others similarly situated, | Case No. 8:22-cv-00392-FWS-JDE |
| Plaintiffs, | Honorable Fred W. Slaughter |
| vs. | **CLASS ACTION** |
| TGI FRIDAYS INC., a New York corporation; and DOES 1 through 50, inclusive, | **MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| Defendants. | Date:      October 19, 2023<br>Time:      10:00 a.m.<br>Courtroom:  10D |

# **TABLE OF CONTENTS**

I.     FACTUAL BACKGROUND ...................................................................... 1

       A.    TGIF's Operations in California .............................................. 1

       B.    TGIF's Wage and Hour Policies ............................................ 1

       C.    Plaintiff Hayden Gragnano.................................................... 3

II.    LEGAL STANDARDS ............................................................................ 5

III.   ARGUMENT ............................................................................................ 7

       A.    The Proposed Classes Are Ascertainable............................... 7

       B.    The Proposed Classes Are Sufficiently Numerous ................. 7

       C.    Common Questions of Law and Fact Predominate the Liability Inquiry for the Meal Break Claim.......................................................... 7

             1.    TGIF's Timekeeping Records Reflect Virtually No Clocked Meal Breaks................................................................................ 8

             2.    TGIF's Unlawful Sign-Off Sheet Evinces a *De Facto* Policy Not to Provide Meal Breaks ........................................................ 9

             3.    Class Member Declarations Corroborate TGIF's Practice of Failing to Provide Compliant Meal Breaks........................... 10

             4.    TGIF's Meal Break Waiver Is Unlawful .......................... 11

       D.    Common Questions of Law and Fact Predominate the Liability Inquiry for the Rest Break Claim........................................................... 12

             1.    TGIF's Unlawful Sign-Off Sheet Evinces a *De Facto* Policy Not to Provide Rest Breaks ........................................................ 13

             2.    Class Member Declarations Corroborate TGIF's Practice of Failing to Provide Compliant Rest Breaks........................... 14

       E.    Common Questions of Law and Fact Predominate the Liability Inquiry for the UCL Claim ............................................................. 14

F.    Common Questions of Law and Fact Predominate the Liability Inquiry for the Derivative Claims .......................................................................... 15

G.    Plaintiff's Claims Are Typical of the Class Members' Claims ................... 15

H.    Plaintiff and Counsel Will Adequately Represent the Class ...................... 16

I.    A Class Action Is Superior to a Multitude of Individual Actions ................ 16

IV.    CONCLUSION ........................................................................................ 18

1

# <u>TABLE OF AUTHORITIES</u>

2

3    **Cases**

4    *Abdullah v. U.S. Sec. Associates, Inc.*
       731 F.3d 952 (9th Cir. 2013) ................................................................. 6
5
     *Alberts v. Aurora Behavioral Health Care*
6      241 Cal.App.4th 388 (2015) ......................................................... 12, 13

7    *Alejandro Caballero v. W. Ref. Retail, LLC*
       2021 WL 2935308 (C.D. Cal. Jun. 9, 2021) .......................................... 8
8
     *Alonzo v. Maximus, Inc.*
9      275 F.R.D. 513 (C.D. Cal. 2011) ......................................................... 17

10   *Antemate v. Estenson Logistics, LLC*
       2015 WL 3822267 (C.D. Cal. Jun. 15, 2015) ..................................... 13
11
     *Benton v. Telecom Network Specialists, Inc.*
12     220 Cal.App.4th 701 (2013) ............................................................... 12

13   *Brinker Restaurant Corp. v. Superior Court*
       53 Cal.4th 1004 (2012) ...................................................... 6, 7, 8, 12
14
     *Blackie v. Barrack*
15     524 F.2d 891 (9th Cir. 1975) ................................................................ 6

16   *Boyd v. Bank of America Corp.*
       300 F.R.D. 431 (C.D. Cal. 2014) ........................................................ 12
17
     *Brewer v. Gen. Nutrition Corp.*
18     2014 WL 5877695 (N.D. Cal. Nov. 12, 2014) .................................... 13

19   *Briseno v. ConAgra Foods, Inc.*
       844 F.3d 1121, 1123 (9th Cir. 2017) ................................................... 7
20
     *Campbell v. Vitran Express Inc.*
21     2015 WL 7176110 (C.D. Cal. Nov. 12, 2015) .................................... 12

22   *Castro v. ABM Industries, Inc.*
       325 F.R.D. 332 (N.D. Cal. 2018) ........................................................ 16
23
     *Donohue v. AMN Servs., LLC*
24     11 Cal.5th 58 (2021) .......................................................... 8, 9, 10, 14

25   *Fodera v. Equinox Holdings, Inc.*
       341 F.R.D. 616 (N.D. Cal. 2022) ............................................... 10, 14
26
     *Ghazaryan v. Diva Limousine, Ltd.*
27     169 Cal.App.4th 1524 (2008) ............................................................. 17

28

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998) ................................................................ 16, 17

*Hanon v. Data Products Corp.*
   976 F.2d 497 (9th Cir. 1992) ........................................................................ 16

*In re ConAgra Foods, Inc.*
   90 F.Supp.3d 919 (C.D. Cal. 2015) ............................................................... 7

*In re Live Concert Antitrust Litigation*
   247 F.R.D. 98 (C.D. Cal. 2007) .................................................................... 18

*In re Visa Check/Master Money Antitrust Litigation*
   280 F.3d 124 (2nd Cir. 2001) ....................................................................... 18

*In re Wells Fargo Home Mortgage Overtime Pay Litigation*
   571 F.3d 953 (9th Cir. 2009) .......................................................................... 6

*J.O.P. v. U.S. Department of Homeland Security*
   2020 WL 7489017 (D. Md. Dec. 21, 2020)...................................................... 7

*Jimenez v. Allstate Ins. Co.*
   765 F.3d 1161 (9th Cir. 2014) ........................................................................ 6

*Kamar v. Radio Shack Corp.*
   254 F.R.D. 387 (C.D. Cal. 2008) .................................................................... 6

*Kirby v. Immoos Fire Protection, Inc.*
   53 Cal.4th 1244 (2012) ................................................................................. 10

*Klay v. Humana, Inc.*
   382 F.3d 1241 (11th Cir. 2004) .................................................................... 18

*Korea Supply Co. v. Lockheed Martin Corp.*
   29 Cal.4th 1134 (2003) ................................................................................. 14

*Levya v. Medline Indus, Inc.*
   716 F.3d 510 (9th Cir. 2013) ................................................................. 5, 6, 17

*Murphy v. Kenneth Cole Prod., Inc.*
   40 Cal.4th 1094 (2007) ................................................................................. 14

*Naranjo v. Spectrum Security Services, Inc.*
   13 Cal.5th 93 (2022) ..................................................................................... 15

*Ricaldai v. U.S. Investigations Servs., LLC*
   878 F.Supp.2d 1038 (C.D. Cal. 2012) ............................................................ 8

*Rodriguez v. Hayes*
   591 F.3d 1105 (9th Cir. 2010) ...................................................................... 16

*Romero v. Producers Dairy Foods, Inc.*
   235 F.R.D. 474 (E.D. Cal. 2006) ................................................................... 17

*Saechao v. Landry's Inc*
   2016 WL 1029479 (N.D. Cal. Mar. 15, 2016) ............................................ 6, 11

*Safeway, Inc. v. Superior Court*
238 Cal.App.4th 1138 (2015) ...................................................... 15

*Shaw v. AMN Healthcare, Inc.*
326 F.R.D. 247 (N.D. Cal. 2018) .................................................. 11

*Stewart v. Quest Diagnostics Clinical Laboratories, Inc.*
2022 WL 5236821 (S.D. Cal. Oct. 5, 2022) ............................. 10, 14

*Trosper v. Styker Corp.*
2014 WL 4145448 (N.D. Cal. Aug. 21, 2014) ............................... 15

*United Steel v. ConocoPhillips Co.*
593 F.3d 802 (9th Cir. 2010) ........................................................ 6

*Valentino v. Cartier-Wallace, Inc.*
97 F.3d 1227 (9th Cir. 1996) ....................................................... 17

*Valenzuela v. Giumarra Vineyards Corp.*
614 F.Supp.2d 1089 (E.D. Cal. 2009) .......................................... 11

*Wal-Mart Stores, Inc. v. Dukes*
131 S.Ct. 2541 (2011) ................................................................... 5

*Westfall v. Ball Metal Beverage Container Corp.*
2019 WL 202677 (E.D. Cal. Jan. 15, 2019) ................................ 15

*Westways World Travel, Inc. v. AMR Corp.*
218 F.R.D. 223 (C.D. Cal. 2003) ................................................... 7

*Williams v. Mohawk Industries, Inc.*
568 F.3d 1350 (11th Cir. 2009) ................................................... 18

**Statutes**

Lab. Code § 512 ....................................................................... 7, 12

Lab. Code § 203 ........................................................................... 15

Lab. Code § 226 .................................................................... 12, 15

Lab. Code § 226.7(c) .................................................................... 12

**Rules**

8 Cal. Code Regs. § 11070, subd. 11 ............................................ 7

8 Cal. Code Regs. § 11010, subd. 12(A) ..................................... 12

Fed. R. Civ. P. 23(a) ..................................................................... 5

Fed. R. Civ. P. 23(a)(1) ................................................................. 7

Fed. R. Civ. P. 23(a)(3) ......................................................................................... 15

Fed. R. Civ. P. 23(a)(4) ......................................................................................... 16

Fed. R. Civ. P. 23(b)(3) ..................................................................................... 6, 17

Fed. R. Civ. P. 23(b) ............................................................................................... 5

**Other Authorities**

Manual for Complex Litigation (4th ed.) § 21.222 ................................................ 7

Newberg on Class Actions § 4:68 (5th ed.) ......................................................... 17

Newberg on Class Actions § 4:72 (5th ed.) ......................................................... 17

MEMORANDUM IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION
8:22-CV-00392-FWS-JDE

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTUAL BACKGROUND**

    **A.    TGIF's Operations in California**

Starting in January of 2020, Defendant TGI Fridays Inc. ("TGIF"), up until then the franchisor for all "TGI Fridays" branded restaurants in California, took over ownership and operation of all such restaurants from franchisee Briad Restaurant Group, LLC and have owned and operated them ever since.[1]

Throughout the Class Period,[2] the staffing of TGIF's restaurants ranged from 50 to 80 employees, depending on the sales volume. Each restaurant had a general manager, a kitchen manager, and up to three managers, all of which positions were salaried. A non-exempt associate manager at times assisted with supervisory duties. Non-exempt hostesses, bussers, servers, bartenders, and expediters worked at the front of the house, while cooks, dishwashers, and prep people worked at the back of the house. The salaried personnel all worked full time, while the employees under them were either full or part time.[3] The total number of non-exempt employees who worked in TGIF's restaurants in California during the Class Period is approximately 3,400 (the "Class Members").[4]

    **B.    TGIF's Wage and Hour Policies**

The Class Members' time records, which were produced in discovery and analyzed

---

[1] Declaration of Mikael H. Stahle ("Stahle Decl."), Exh. A [Belmont Depo] at 17:9-13, 25:4-26:6, 28:3-10. In his deposition, TGIF's Person Most Knowledgeable, Robert Belmont, estimated the number of these restaurants to be 16, including the Westminster location which closed during the COVID-19 pandemic. Belmont Depo at 28:3-29:7. In its responses to Plaintiffs' Interrogatories, TGIF identified 18 restaurants, including the Westminster location. Stahle Decl., Exh. B [Resp to Rogs Set 1] at 5:17-6:24.

[2] On December 15, 2021, judgment was entered in a prior wage and hour class and PAGA action approving a settlement covering all non-exempt employees working in TGIF restaurants in California, with a release period of April 27, 2017 through January 31, 2020. *See* Stahle Decl., Exh. C [Mercado Judgment], ¶ 4. In light of the prior settlement, the period for which Plaintiff seeks certification in the instant case is February 1, 2020 through the date of class certification (the "Class Period").

[3] Belmont Depo at 35:4-38:22.

[4] Belmont Depo at 131:11-132:3; Resp to Rogs Set 1 at 7:21-8:5; Declaration of Teresa Fulimeni, MA ("Fulimeni Decl.") at 5:16-19.

by Plaintiff's expert, reveal *virtually no meal breaks* having been taken during the Class Period. Of the 361,251 shifts over five hours the Class Members worked during the Class Period, an astonishing 99.1 percent had no corresponding time entries for a meal break.[5] And of the 301,626 shifts over *six* hours, a full 99.0 percent had no time entries for a meal break.[6]

In an apparent effort to avoid paying premiums for all of these missing meal breaks, TGIF had a policy requiring managers to collect signatures from Class Members at the end of each pay period on a "Bi-Weekly Meal and Rest Break Acknowledgment Form."[7] The form required Class Members to indicate by their signature *either* that they had chosen not to take their meal or rest break *or* that they had been denied one.[8] That the employee might have wanted to *take* a meal or rest break was not contemplated.

TGIF's 30(b)(6) witness for payroll testified that the Bi-Weekly Form was used in conjunction with the time records to determine whether a Class Member was entitled to a meal break premium. For any shift without a clocked meal break, TGIF paid the employee for her time on the clock but no meal break premium.[9] The company only paid a premium if the employee signed the right-hand column of the Bi-Weekly Form *and* her manager submitted an additional form, signed by herself and the manager, stating she was denied her break.[10] Of course, as the Class Members' payroll records bear out, this rarely occurred; of the 299,593 shifts over five hours with a short, missed, or late meal break, only 85 shifts

---

[5] Fulimeni Decl. at 7 (Table 1), 9 (Table 4).

[6] Fulimeni Decl. at 7 (Table 1), 9 (Table 4).

[7] Stahle Decl., Exh. D [Shapiro Depo] at 54:16-55:14, and Exh. 5 to Shapiro Depo; Belmont Depo at 74:7-17, and Exh. 7 to Belmont Depo.

[8] Shapiro Depo at 39:19-40:22, 43:6-21, 43:23-44:4, and Exh. 3 to Shapiro Depo.

[9] Shapiro Depo at 43:6-21, 43:23-44:4.

[10] Shapiro Depo at 55:17-57:6, and Exh 5 to Shapiro Depo at TGIF 3991; Belmont Depo at 82:4-83:4, 87:8-88:1.

1  appear to have been compensated with a meal premium.[11]

2  In a further attempt to insulate itself from having to provide meal breaks, TGIF
3  requires all new employees to sign a meal break waiver form at the time of onboarding,
4  ostensibly waiving all future meal breaks for shifts between five and six hours and for shifts
5  between 10 and 12 hours.[12] The form purports to allow the employee to revoke the waiver
6  in writing,[13] although TGIF does not provide a form for doing so.[14]

7  Finally, TGIF does not schedule meal or rest breaks,[15] and should an employee desire
8  a break, TGIF requires the employee to ask a manager to see if coverage can be arranged,[16]
9  and the company will "work to make an accommodation to give them a break."[17]

10  ### C.   Plaintiff Hayden Gragnano

11  Plaintiff Gragnano was employed as a Host, Busser, and Server at TGIF in Corona,
12  California from approximately 2017 to August 2021. By 2020, he worked primarily as a
13  Server and only worked as a Server from then on.[18]

14  Throughout his employment, Plaintiff rarely was able to take a meal period because
15  his managers and supervisors did not allow him and or his co-workers to take meal periods.
16  Even when he asked his supervisors and managers if he could take a meal break, he was
17  denied that right. The general practices in the restaurant was that the employees were not
18  allowed to take meal breaks and needed a supervisor's permission to take any breaks. As a
19  server, Plaintiff was required to cover the tables he was assigned and could not leave them

20  ---
[11] Fulimeni Decl. at 9:14 (Table 4), 5:20-6:3 and fn. 6, 9:25-10:6. Meal break premiums
21  were paid under earnings code "CA Meal Break." Shapiro Depo at 64:7-16, and Exh. 6
to Shapiro Depo at 14:8. Per TGIF's 30(b)(6) testimony, rest break premiums fell under
22  the same earnings code. Shapiro Depo at 64:17-66:7.

23  [12] Shapiro Depo at 15:13-22, 47:13-21, and Exh. 4 to Shapiro Depo; Belmont Depo
52:15-19, and Exh. 4 to Belmont Depo.

24  [13] Exh. 4 to Belmont Depo.
25  [14] Belmont Depo at 55:11-15.
26  [15] Belmont Depo at 99:3-15, 103:3-104:7, and Exh. 12 to Belmont Depo.
[16] Belmont Depo at 47:20-48:20, 87:8-88:1, 104:13-105:3, and Exh. 2 to Belmont Depo.
27  [17] Belmont Depo at 104:21-22.
28  [18] Declaration of Hayden Gragnano ("Gragnano Decl."), ¶ 3.

MEMORANDUM IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION
8:22-CV-00392-FWS-JDE

unattended to take a break. Because the restaurant was short staffed, there often would not be somebody to cover him so he could take his meal breaks. The restaurant's practice of not allowing employees to take meal breaks was the same regardless of which manager was on duty and did not change when managers came in from other TGIF locations to work at Plaintiff's restaurant.[19]

Throughout his employment, Plaintiff was required to sign a bi-weekly meal and rest break acknowledgment form. Typically, his managers gave it to him to sign while handing out paychecks and told him that he needed to sign it in order to start working. In the form, Plaintiff had to select one of two options provided on the sign-off sheet: either that he had voluntarily worked through his breaks or that he had been denied them. He felt pressured to sign in the column stating that he had "voluntarily worked through his breaks" because the times when he tried to sign that he had been denied breaks, his manager Antonio, told him "You can't do that" and "You need to sign here."[20]

Plaintiff does not recall ever being informed or trained about meal and rest breaks. When TGIF took over the restaurant from the previous operator, Plaintiff did not receive any additional training. TGIF did not train him or explain any onboarding documents.[21]

Plaintiff clocked in for the start of his shift by using the POS systems to clock in and out that were located throughout the restaurant. On the rare occasions when he was able to take a meal break (which he estimates was less than 20 times over his entire employment), he needed the manager's permission and clocked out for the meal period. He could not clock out in the time system without a manager's approval.[22]

Throughout his employment, Plaintiff rarely was permitted to take 10-minute rest breaks. He regularly asked his managers if he could get a 10-minute break, but they almost always said no and told him that there were tables to tend to, that there was not enough

---

[19] Gragnano Decl., ¶ 5.
[20] Gragnano Decl., ¶ 7.
[21] Gragnano Decl., ¶ 8.
[22] Gragnano Decl., ¶ 9.

time, or that someone could come into the restaurant when he was on a break. They often told him "not right now" but it really meant not at all, as they would not permit him to take a 10-minute rest break. He was only able to put some food in the breakroom and just take a bite and go back and forth between eating and being out on the floor serving customers. Plaintiff estimates that he took an uninterrupted 10-minute rest break only a couple of times during his employment at TGIF.[23]

Moreover, Plaintiff was not allowed to leave the restaurant's premises during rest breaks. His managers specifically told him and his co-workers that they were not allowed to leave the work premises during rest breaks. Plaintiff believed he would be written up or disciplined if he left the restaurant premises during a rest break.[24]

Throughout his employment, Plaintiff and his co-workers complained to each other about the lack of meal and rest breaks. Plaintiff's manager Antonio was there during some of those discussions. In addition, Plaintiff talked to Antonio about the bi-weekly meal and rest break acknowledgment form and the fact that he did not want to sign it. Antonio said he was going to talk to the other managers about it, but then he told Plaintiff that he had spoken to the other managers and that Plaintiff still needed to sign the form.[25]

## II.   LEGAL STANDARDS

A party seeking to certify a class must demonstrate he has met the "four threshold requirements of Federal Rule of Procedure 23(a): (i) numerosity; (ii) commonality; (iii) typicality; and (iv) adequacy of representation." *Levya v. Medline Industries, Inc.*, 716 F.3d 510, 512 (9th Cir. 2013). Once these prerequisites are satisfied, a court must consider whether the proposed class can be maintained under at least one of the requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2548 (2011). Plaintiff, here, seeks certification pursuant to Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual

---

[23] Gragnano Decl., ¶ 10.

[24] Gragnano Decl., ¶ 11.

[25] Gragnano Decl., ¶ 13.

members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

When, as here, workplace violations are at issue, "the key question for class certification is whether there is a consistent employer practice [or policy] that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). The focus of the class certification inquiry is not whether plaintiff ultimately will prevail but whether plaintiff's theory of liability is amenable to classwide adjudication. *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 808 (9th Cir. 2010); *Abdullah v. U.S. Sec. Associates, Inc.*, 731 F.3d 952, 964, (9th Cir. 2013) (Rule 23(b)(3) requires only "'a showing that questions common to the class predominate'"); *Saechao v. Landry's Inc*, 2016 WL 1029479, at *4 (N.D. Cal. Mar. 15, 2016) ("The common questions advanced for certification need not necessarily be questions that will be resolved in favor of the class. At this stage, [plaintiff] need only show that there is a bona fide question capable of class-wide resolution.").

The fact that class members may be affected by defendant's policies or practices to varying degrees or may have suffered varying damages is not a bar to certification. *Leyva, supra*, at 514 ("[T]he presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)."). Class treatment is appropriate even if each class member may be required to make an individual showing of recovery. *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014) ("damages determinations are individual in nearly all wage-and-hour class actions [and] damage calculations alone cannot defeat class certification."). For these reasons, courts have granted class certification in wage and hour cases alleging standard-ized and uniform policies that affect all class members in a similar manner. *See, e.g.*, *In re Wells Fargo Home Mortgage Overtime Pay Litigation*, 571 F.3d 953, 958 (9th Cir. 2009); *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1033 (2012).

///

///

## III.   ARGUMENT

### A.   The Proposed Classes Are Ascertainable

A proposed class is ascertainable where the definition of its membership is precise using objective criteria. Manual for Complex Litigation (4th ed.) § 21.222; *In re ConAgra Foods, Inc.*, 90 F.Supp.3d 919, 969-971 (C.D.Cal. 2015). While some circuits have read a heightened standard of ascertainability—"administrative feasibility"—into Rule 23 as a prerequisite to certification, the Ninth Circuit has declined to do so. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017); *J.O.P. v. U.S. Department of Homeland Security*, No. 8:19-cv-01944, 2020 WL 7489017, at *11 (D. Md. Dec. 21, 2020). Here, Plaintiff seeks certification of a clearly defined class and subclasses of current and former non-exempt employees of TGIF's restaurants in California during a specified time period. *See* Notice of Motion, filed concurrently herewith.

### B.   The Proposed Classes Are Sufficiently Numerous

The numerosity requirement is satisfied when "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiff need not quantify with precision the number of class members. *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 233-234 (C.D. Cal. 2003).

The proposed classes are sufficiently numerous as the total number of class members is approximately 3,400.[26]

### C.   Common Questions of Law and Fact Predominate the Liability Inquiry for the Meal Break Claim

An employer in California has an *affirmative obligation* to provide its employees with meal breaks that satisfy the criteria of the wage order. *Brinker Restaurant Corp. v. Superior Court*, 53 Cal.4th 1004, 1031, 1040 (2012); Lab. Code § 512(a); 8 Cal. Code Regs. § 11070, subd. 11. The employer satisfies the meal period obligation "if it relieves its employees of all duty, relinquishes control over their activities and permits them a

---

[26] Belmont Depo at 131:11-132:3; Fulimeni Decl. at 5:16-19.

MEMORANDUM IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION
8:22-CV-00392-FWS-JDE

1    reasonable opportunity to take an uninterrupted 30-minute break, and does not impede or

2    discourage them from doing so." *Brinker, supra*, at 1040. The meal period must begin no

3    later than the end of the fifth hour of work. *Donohue v. AMN Servs., LLC*, 11 Cal.5th 58,

4    61 (2021). An employer that fails to provide a compliant meal break must "pay the

5    employee one additional hour of pay at the employee's regular rate of compensation for

6    each workday that the meal … period is not provided." (Lab. Code § 226.7.)

7         **1.    TGIF's Timekeeping Records Reflect Virtually No Clocked Meal**

8              **Breaks**

9              Under the applicable Wage Order, an employer is required to keep accurate records

10   showing the times when an employee begins and ends each work period, and requires that

11   "meal periods shall also be recorded." Wage Order 7-2001, § 7(A)(3). In *Donohue, supra*,

12   11 Cal.5th 58, the California Supreme Court, adopting the reasoning of Justice Werdegar's

13   concurrence in *Brinker, supra*, at 1004, held that time records "showing noncompliant meal

14   periods raise a rebuttable presumption of meal period violations." *Id*. at 61. Under this

15   presumption, "[i]f an employer's records show no meal period for a given shift over five

16   hours, a rebuttable presumption arises that the employee was not relieved of duty and no

17   meal period was provided." *Id*. at 74. This presumption applies not only to records showing

18   "missed meal periods" but also when records show "short and delayed meal periods." *Id*.

19   at 76; *see also Alejandro Caballero v. W. Ref. Retail, LLC*, No. 8:21-cv-00018, 2021 WL

20   2935308, *2 (C.D. Cal. Jun. 9, 2021) ("*Donohue* makes clear that while this rebuttable

21   presumption does not require employers to police meal periods, it does "require[ ]

22   employers to give employees a mechanism for recording their meal periods and to *ensure*

23   *that employees use the mechanism properly*.") (emphasis added). While *Donohue* adopted

24   the presumption in connection with summary judgment, Justice Werdegar's concurrence

25   in *Brinker* argued that the presumption applies at the class certification stage. *Donohue*

26   clarified that the presumption applies at both stages of litigation. *Id*. at 76-77. *See also*

27   *Ricaldai v. U.S. Investigations Servs., LLC*, 878 F.Supp.2d 1038, 1043-1044 (C.D. Cal.

28   2012) (adopting and applying presumption articulated in *Brinker* concurrence).

Specifically, *Donohue* explained that the presumption of liability is rooted in the "employer's duty to maintain accurate records of meal periods." *Id*. at 76. "Because time records are required to be accurate, it makes sense to apply a rebuttable presumption of liability when records show noncompliant meal periods. If the records are accurate, then the records reflect an employer's true liability; applying the presumption would not adversely affect an employer that has complied with meal period requirements and has maintained accurate records." *Id*. at 77. In the context of meal periods, the importance of accurate timekeeping is paramount. *See id*. at 69 ("By requiring premium pay for any violation, no matter how minor, the structure makes clear that employers must provide compliant meal periods whenever such a period is triggered.").

As seen above, the time records reveal *virtually no meal breaks* having been taken during the Class Period, thereby triggering the rebuttable presumption of liability under *Donohue*.

## 2. TGIF's Unlawful Sign-Off Sheet Evinces a *De Facto* Policy Not to Provide Meal Breaks

TGIF's Bi-Weekly Meal and Rest Break Acknowledgment Form is clearly unlawful and just another means by which TGIF impedes and discourages the Class Members from availing themselves of their statutory right to meal and rest breaks. By requiring the Class Members to certify with their signature that one of two scenarios took place during the pay period, neither of which involved the possibility of actually taking a break, TGIF in effect communicated to the Class Members an official policy of denying meal and rest breaks.

Moreover, by elevating to policy the categorical denial of meal and rest breaks and offering premium pay as the sole available relief (aside from the false option of "choosing" to give up your breaks yourself), TGIF runs afoul of the principle that an employer may not buy its way out of the meal and rest break obligation:

> It is true that the remedy for a violation of the statutory obligation to provide IWC-mandated meal and rest periods is "one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided."

MEMORANDUM IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION
8:22-CV-00392-FWS-JDE

. . .

[However], subdivision (a) of section 226.7 defines a legal violation solely by reference to an employer's obligation to provide meal and rest breaks. (See § 226.7, subd. (a) ["No employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission."].) The "additional hour of pay" provided for in subdivision (b) is the legal remedy for a violation of subdivision (a), but whether or not it has been paid is irrelevant to whether section 226.7 was violated. In other words, section 226.7 does not give employers a lawful choice between providing *either* meal and rest breaks *or* an additional hour of pay. An employer's … provision of an additional hour of pay does not excuse a section 226.7 violation.

*Kirby v. Immoos Fire Protection, Inc.*, 53 Cal.4th 1244, 1256 (2012) (emphasis in original).

### 3.      Class Member Declarations Corroborate TGIF's Practice of Failing to Provide Compliant Meal Breaks

In the present case, Plaintiff has submitted with this motion sworn declarations from himself and 26 other Class Members, showing that TGIF created a work environment in which the Class Members were not just discouraged, but actively prevented, from taking meal breaks.[27] Plaintiff intends to present survey data of a representative sample of Class Members to establish TGIF's pattern and practice of impeding the Class Members' right and ability to enjoy the protections of timely and duty-free meal breaks.[28] *See Donohue, supra*, at 74 ("Representative testimony, surveys, and statistical analysis," along with other types of evidence, "are available as tools to render manageable determinations of the extent of liability."); *Stewart v. Quest Diagnostics Clinical Laboratories, Inc.*, 3:19-cv-02043, 2022 WL 5236821, *9-10 (S.D. Cal. Oct. 5, 2022) (court considered declaration of survey expert at certification stage where reliable and relevant to plaintiff's claims); *Fodera v. Equinox Holdings, Inc.*, 341 F.R.D. 616, 625-626 (N.D. Cal. 2022) (certifying class based on proposed survey intended to collect information about meal and rest periods).

///

---

[27] *See, e.g.*, Alexander Decl., ¶¶ 4, 5; Smith Decl., ¶¶ 4, 5; Galvin Decl., ¶¶ 4, 5; Hanna-Baker Decl., ¶¶ 4, 5; Valenzuela Decl., ¶¶ 4, 5; Parker Decl., ¶¶ 4, 5; Kairouz Decl., ¶ 4; Foster Decl., ¶¶ 4, 5; Velasquez Decl., ¶¶ 4, 6, attached to Compendium of Class Member Declarations; Gragnano Decl., ¶¶ 5, 6, 7, 9.

[28] *See* Declaration of Laura R. Steiner, MBA ("Steiner Decl.").

### 4.    TGIF's Meal Break Waiver Is Unlawful

The validity of a written meal break waiver can be analyzed on a classwide basis. "Whether or not California law permits an employer to utilize prospective meal-break waivers remains an open question which can plainly be resolved on a class-wide basis." *Saechao v. Landrys*, No. 3:15-cv-00815, 2016 WL 1029479, *3 (N.D. Cal. Mar. 15, 2016), n.1; *Shaw v. AMN Healthcare, Inc.*, 326 F.R.D. 247, 271 (N.D. Cal. 2018) ("As Plaintiffs raise a pure question of law as to Defendants' blanket waiver policy, there is clearly a common issue that predominates as to the claims Plaintiffs assert based on that theory.").

Meal break waivers that by their terms purport to be valid in perpetuity are unlawful regardless of whether they are voluntary, as they involve "a statutorily protected right, [and] the decision to forego a meal period must be made personally by each worker on a daily basis." *Valenzuela v. Giumarra Vineyards Corp.*, 614 F.Supp.2d 1089, 1095 (E.D. Cal. 2009); *see also Saechao, supra*, at *3, n.1; *Shaw, supra*, at 271.

In accordance with *Valenzuela, supra*, the decision to forego a meal period must be made separately for each break on a daily basis. Under TGIF's meal break waiver, the daily decision facing employees who has signed the waiver is not whether to forego the meal break (which decision was made in one stroke for all future meal breaks when the waiver was signed) but whether to revoke the waiver. The court in *Valenzuela* held that this burden-shift is what makes a prospective waiver (as distinguished from a waiver made each day, one meal break at a time) invalid.

In the present case, TGIF's records indicate that approximately 1,200 of the Class Members, including Plaintiff, signed the CA Meal Break Waiver.[29] TGIF's blanket meal break waiver form is unlawful because the moment the employee signs it, the burden shifts to the employee to make sure his or her meal break is available in the future. This burden-shift impedes the Class Members' right to avail themselves of the opportunity to take meal breaks, which is an affirmative obligation that California law imposes on the employer. *See*

---

[29] Fulimeni Decl. at 6:7-9, 9:16-24; Exh. 4 to Belmont Depo.

1    *Brinker, supra*, 53 Cal.4th at 1040 (employer must permit employees a "reasonable oppor-

2    tunity" to take a compliant meal break and must "not impede or discourage them from

3    doing so").

4         **D.    Common Questions of Law and Fact Predominate the Liability Inquiry**

5              **for the Rest Break Claim**

6         Employers are required to provide employees with a paid 10-minute rest period per

7    every four hours worked or major fraction thereof. 8 Cal. Code Regs. § 11010, subd. 12(A);

8    Lab. Code § 226.7. "If an employer fails to provide an employee a … rest … period[,] …

9    the employer shall pay the employee one additional hour of pay at the employee's regular

10   rate of compensation for each workday that the meal or rest … period is not provided."

11   Lab. Code § 226.7(c); *see* 8 Cal. Code Regs. § 11010, subd. 11(D), 12(B).

12        "[E]mployers do not escape liability simply by having a formal policy of providing

13   meal and rest breaks." *Boyd v. Bank of America Corp.*, 300 F.R.D. 431, 442 (C.D. Cal.

14   2014); *Brinker, supra*, 53 Cal.4th at 1040 ("[A]n employer may not undermine a formal

15   policy of providing [] breaks by pressuring employees to perform duties in ways that omit

16   breaks."). "An employer cannot contravene an official [] break policy by imposing an

17   informal practice that impedes or discourages its employees from taking compliant

18   breaks." *Campbell v. Vitran Express Inc.*, No. 2:11-cv-05029, 2015 WL 7176110, *4 (C.D.

19   Cal. Nov. 12, 2015). As the court explained in *Benton v. Telecom Network Specialists, Inc*.,

20   220 Cal.App.4th 701 (2013), the wage order "imposes an affirmative obligation on every

21   employer to authorize and provide legally required meal and rest breaks; if it fails to do so,

22   it has violated the law and is liable." *Id*. at 728.

23        In *Alberts v. Aurora Behavioral Health Care*, 241 Cal.App.4th 388 (2015), plaintiffs

24   alleged that class members routinely were denied meal and rest breaks due to understaffing.

25   *Id*. at 394. The Court of Appeal reversed the trial court's order denying certification,

26   holding that "the mere existence of a lawful break policy will not defeat class certification

27   in the face of contravening policies and practices that, as a practical matter, undermine the

28   written policy and do not permit breaks." *Id*. at 406. The court also rejected the notion that

-12-

a plaintiff must prove, at certification, a "universal practice" to deny required breaks. *Id*. at 407. Instead, the court noted, "At the certification stage, plaintiffs need only establish … whether the … [challenged] practices or procedures resulted in denial of lawful breaks can be determined on a class-wide basis." *Id*.

"[E]ven if an employer has a formal policy that is compliant with California law, proof of an informal but common scheduling policy that makes taking breaks extremely difficult, or other informal means of exerting pressure to discourage taking meal and rest breaks, [is] sufficient to establish liability to a class." *Brewer v. Gen. Nutrition Corp.*, No. 4:11-cv-03587, 2014 WL 5877695, *7 (N.D. Cal. Nov. 12, 2014); *Antemate v. Estenson Logistics, LLC*, No. 2:14-cv-05255, 2015 WL 3822267, *2 (C.D. Cal. June 15, 2015) (concluding common questions predominated where plaintiff contended "[defendant]'s informal policies and practices create[d] an environment in which [employees] [were] routinely pressured not to take compliant breaks").

### 1.   TGIF's Unlawful Sign-Off Sheet Evinces a *De Facto* Policy Not to Provide Rest Breaks

As discussed, TGIF's Bi-Weekly Meal and Rest Break Acknowledgment Form is unlawful and simply a means by which TGIF impedes and discourages the Class Members from availing themselves of their statutory right to meal and rest breaks. By requiring the Class Members to certify with their signature that one of two scenarios took place during the pay period, neither of which involved the possibility of *actually taking a break*, TGIF in effect communicated to the Class Members an official policy of denying meal and rest breaks. *See Brewer, supra*, at *7 (informal means of exerting pressure to discourage taking of meal and rest breaks sufficient to establish liability to a class); *Antemate, supra*, at *2 (common questions predominated where defendant's informal policies and practices created environment in which employees were routinely pressured not to take compliant breaks).

///

///

MEMORANDUM IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION
8:22-CV-00392-FWS-JDE

1
2

### 2. Class Member Declarations Corroborate TGIF's Practice of Failing to Provide Compliant Rest Breaks

3  The sworn declarations from himself and 26 other Class Members that Plaintiff has
4  submitted with this motion show that TGIF deliberately fostered a work environment in
5  which the Class Members were prevented from taking rest breaks.[30] Plaintiff intends to
6  present survey data of a representative sample of Class Members to establish TGIF's
7  pattern and practice of impeding the Class Members' right and ability to enjoy the protec-
8  tions of statutory rest breaks.[31] *See Donohue, supra*, at 74 ("Representative testimony,
9  surveys, and statistical analysis," along with other types of evidence, "are available as tools
10  to render manageable determinations of the extent of liability."); *Stewart, supra*, at *9-10
11  (court considered declaration of survey expert at certification stage where reliable and
12  relevant to plaintiff's claims); *Fodera, supra*, at 625-626 (certifying class based on pro-
13  posed survey intended to collect information about meal and rest periods).

14
15

### E. Common Questions of Law and Fact Predominate the Liability Inquiry for the UCL Claim

16  The failure to pay meal and rest break premiums when due violates the Unfair
17  Competition Law (UCL) as an independent basis for restitutionary relief of earned wages,
18  in addition to violating the Labor Code. *See Korea Supply Co. v. Lockheed Martin Corp.*,
19  29 Cal.4th 1134, 1149 (2003) (restitution "allow[s] a plaintiff to recover money or property
20  in which he or she has a vested interest"); *Cortez v. Purolator Air Filtration Products Co.*,
21  23 Cal.4th 163, 178 (2000) (employees have a vested interest in their wages). An
22  employee's right to the meal break premium vests immediately upon the failure to provide
23  the break. *Murphy v. Kenneth Cole Productions, Inc.*, 40 Cal.4th 1094, 1108 (2007) ("an
24  employee is entitled to the additional hour of pay immediately upon being forced to miss a

25
26  [30] *See, e.g.*, Alexander Decl., ¶¶ 4, 6, 8; Smith Decl., ¶ 6; Galvin Decl., ¶¶ 4, 6; Hanna-Baker Decl., ¶¶ 4, 6, 8; Pale Decl., ¶ 8; Valenzuela Decl., ¶¶ 6; Parker Decl., ¶¶ 6, 8;
27  Kairouz Decl., ¶¶ 4, 5; Foster Decl., ¶ 6; Velasquez Decl., ¶¶ 4, 5, 7, 9, attached to Compendium of Class Member Declarations; Gragnano Decl., ¶¶ 7, 8, 10, 11, 13.
28  [31] *See* Declaration of Laura R. Steiner, MBA ("Steiner Decl.").

MEMORANDUM IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION
8:22-CV-00392-FWS-JDE

rest or meal period … akin to an employee's immediate entitlement to payment of wages or for overtime"); *Safeway, Inc. v. Superior Court*, 238 Cal.App.4th 1138, fn. 5 (2015) ("employee's right to the premium wages *vests* prior to any action taken to enforce that right") (original italics).

In the present case, Plaintiff alleges a liability period for his meal break and reimbursement claim that extends four years back from the filing of the complaint. Because these claims are suitable for class treatment, certifying Plaintiff's UCL claim predicated on the same unlawful policies and practices is also appropriate.

## F.   Common Questions of Law and Fact Predominate the Liability Inquiry for the Derivative Claims

An employer's obligation under Labor Code section 226(a) to report wages earned "includes an obligation to report premium pay for missed breaks." *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal.5th 93, 121 (2022). Similarly, "missed-break premium pay constitutes wages for purposes of Labor Code section 203, and so waiting time penalties are available under that statute if the premium pay is not timely paid." *Id*. at 117.

Plaintiff's claims for failure to provide accurate wage statements under Labor Code section 226 and failure to pay all wages due upon separation under Labor Code section 203 are derivative of Plaintiff's meal and rest break claims. *See* Consolidated Am. Compl., ¶¶ 43, 51. Dkt. 48. Because common issues predominate with respect to the meal break claims, the derivative claims should also be certified. *See, e.g., Trosper v. Styker Corp.*, No. 5:13-cv-00607, 2014 WL 4145448, at *19 (N.D. Cal. Aug. 21, 2014); *Westfall v. Ball Metal Beverage Container Corp.*, No. 2:16-cv-02632, 2019 WL 202677, at *1 (E.D. Cal. Jan. 15, 2019).

## G.   Plaintiff's Claims Are Typical of the Class Members' Claims

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Typicality is met where other class members "'have the same or similar injury, … the action is based on conduct which is not unique to the named plaintiffs, and … other class members have been

injured by the same conduct.'" *Hanon v. Data Products Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "[T]he typicality requirement is permissive and requires only that the represent-ative's claims are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010); *see Castro v. ABM Industries, Inc.*, 325 F.R.D. 332, 341-342 (N.D. Cal. 2018).

Here, Plaintiff's claims and the claims he is asserting on behalf of the classes are identical and arise out of the class members' being deprived of compliant meal and rest breaks. Accordingly, the typicality requirement is satisfied.

### H.    Plaintiff and Counsel Will Adequately Represent the Class

Rule 23(a)(4) requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon, supra*, at 1019.

Here, Plaintiff has represented the class he seeks to represent in a manner consistent with the fiduciary obligation his has undertaken, responding to discovery, gathering and producing responsive documents, and working closely with his attorneys throughout the case. *See* Stahle Decl., ¶¶ 6-10; Gragnano Decl., ¶¶ 14-16. There is no conflict between the interests of Plaintiff and the class because Plaintiff is seeking to maximize the recovery for all class members. *Id*. Additionally, Plaintiffs' counsel are well qualified to represent the class, as they have extensive experience litigating complex civil matters and class actions, including similar wage and hour litigation in both California and federal courts. Declaration of Matthew J. Matern ("Matern Decl."), ¶¶ 6-9; Stahle Decl., ¶¶ 2-5; Declaration of Fawn F. Bekam ("Bekam Decl."), ¶¶ 3-19. Accordingly, the adequacy requirement is met.

### I.    A Class Action Is Superior to a Multitude of Individual Actions

In evaluating whether a class action is superior to other available methods for fairly and efficiently adjudicating a case, courts must consider: (1) the interests of the class members in individually controlling prosecution of separate actions; (2) the extent and

nature of any pending litigation concerning the controversy; (3) the desirability of litigating the claims in the particular forum where the class action is filed; and (4) difficulties likely to be encountered in managing the class action. Fed. R. Civ. P. 23(b)(3)(A)-(D); Newberg on Class Actions § 4:68 (5th ed.). A class action is superior "[w]here classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Cartier-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Systematic practices that violate California's wage and hours laws are particularly well suited for class treatment. *Ghazaryan v. Diva Limousine, Ltd.*, 169 Cal.App.4th 1524, 1538 (2008) (noting that "wage and hour disputes … routinely proceed as class actions"); *Alonzo v. Maximus, Inc.*, 275 F.R.D. 513, 527 (C.D. Cal. 2011).

First, class treatment in the present case is clearly superior to hundreds of individual actions. There is little incentive for each class member to file an individual claim as the filing fees and other costs of litigation would typically exceed any potential recovery. *See Leyva v. Medline Ind., Inc.*, 716 F.3d 510, 513-515 (9th Cir. 2013); *Hanlon, supra*, at 1023.

Second, Plaintiff is not aware of any related cases against TGIF involving the same claims alleged by Plaintiffs in this action. Stahle Decl., ¶ 10.

Third, this particular forum is appropriate because the class members worked in California and California substantive state law will govern the outcome of this case. *See Alonzo, supra*, at 527; *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 491 (E.D. Cal. 2006).

Fourth, the proposed class proceeding in the present case is superior, as it will be effectively managed. What courts consider when analyzing manageability is not whether a class action is manageable in the abstract but how the issues that might occur in managing it compare to the issues that could occur in managing litigation without a class suit. *See* Newberg on Class Actions § 4:72 (5th ed.). In other words, the manageability inquiry is a comparative one: "[W]e are not assessing whether this class action will create significant management problems, but instead determining whether it will create relatively more management problems than any of the alternatives." *Williams v. Mohawk Industries, Inc.*,

MEMORANDUM IN SUPPORT OF MOTION
FOR CLASS CERTIFICATION
8:22-CV-00392-FWS-JDE

1   568 F.3d 1350, 1358 (11th Cir. 2009).

2       Given that the alternatives to a class suit are rarely more manageable than aggregate

3   litigation, manageability "will rarely, if ever, be in itself sufficient to prevent certification

4   of a class." *In re Visa Check/Master Money Antitrust Litigation*, 280 F.3d 124, 140 (2nd

5   Cir. 2001). Indeed, courts in at least seven circuits, including the Ninth Circuit, have held

6   that there is a presumption against dismissing a class action on manageability grounds or

7   that such dismissals are disfavored. *See, e.g., In re Live Concert Antitrust Litigation*, 247

8   F.R.D. 98, 148 (C.D. Cal. 2007).

9       Finally, because the cases most likely to be unmanageable are those involving a

10  myriad of individual issues, the manageability concern often simply echoes the predomin-

11  ance analysis. Therefore, courts generally hold that if the predominance requirement is met,

12  the manageability requirement is met as well. *See, e.g., Klay v. Humana, Inc.*, 382 F.3d

13  1241, 1272 (11th Cir. 2004) ("[W]here a court has already made a finding that common

14  issues predominate over individualized issues, we would be hard pressed to conclude that

15  a class action is less manageable than individual actions.").

16      Because a class action is a superior method of adjudicating the claims in this action,

17  Plaintiff respectfully asks that the Court grant class certification.

18  **IV.    CONCLUSION**

19      For the foregoing reasons, Plaintiff respectfully asks that the Court grant Plaintiff's

20  motion for class certification.

21

22  Dated:  August 3, 2023            **MATERN LAW GROUP, PC**

23

24                           By:    */s/ Mikael H. Stahle*
                                    MATTHEW J. MATERN
25                                   MIKAEL H. STAHLE
                                    KAYVON SABOURIAN
26                                   **AEGIS LAW FIRM, PC**
                                    KASHIF HAQUE
27                                   FAWN F. BEKAM

28                                   Attorneys for Plaintiffs